

SwissGuard International, GmbH
Bahnhofstrasse 52
CH-8001 Zurich, Switzerland

DARRELL AVISS
Managing Director

+41 44 214 62 47 [t]
+41 44 214 65 19 [f]
aviss@swiss-annuity.com
swiss-annuity.com

*The SwissGuard Solution*™

USAOAVISS_00028325

EXHIBIT 2 - (MB)



**SWISSTRUST**
i n t e r n a t i o n a l

**GENERAL CONDITIONS FOR THE**
**FLEX-CURRENCY ANNUITY CERTIFICATE (FCAC™)**
**A SINGLE-PREMIUM FIXED ANNUITY – DEFERRED**
**OR IMMEDIATE**

## I.   PURPOSE OF THE CONTRACT

### 1.   Purpose of the contract

The guaranteed insurance benefits are defined in the policy, named as the **FCAC**™ certificate.

### 2.   CONTRACTUAL AND LEGAL BASIS

2.1   The written declarations of the owner and the insured person, given in reply to any questions asked by SwissTrust International in the insurance proposal and the modifications proposals, form the basis of the contract.

2.2   The contract includes these General Conditions, the certificate, its addenda and any special conditions.

2.3   Except for modifications expressly agreed upon between both parties, this contract shall be governed by the present General Conditions including the Swiss Federal Law of April 2, 1908 (LCA), as well as Swiss Law in general.

2.4   SwissTrust International provides the owner without charge with a certificate stipulating the rights and obligations of both parties.

2.5   Any special agreement or modification of the contract must, to be valid, be confirmed in writing by SwissTrust International.

### 3.   DEFINITIONS

3.1   **The insurer** :
SwissTrust International whose headquarters is in Geneva, Switzerland.

3.2   **The owner** :
The person or legal entity applying for and signing the contract.

3.3   **The insured person** :
The person upon whose life the contract's obligations and benefits are calculated.

3.4   **The beneficiaries during life** :
Any eligible party, person, corporate body or trust entitled to a contractual benefit as designated by the owner, while the insured person is alive.

3.5   **The beneficiaries at death** :
Any eligible party, person, corporate body or trust entitled to a contractual benefit on the death of the insured person as designated by the owner.

3.6   **The contractual year** :
Each period of one year beginning at the inception date of the contract and thereafter. The age of the insured person is measured in terms of complete years. Fractions of more than six months shall count as a full year and fractions of six months or less shall be disregarded.

3.7   **The contractual annuity** :
The amount of the guaranteed annuity indicated in the certificate.

3.8   **The annuity income payment** :
The amount of an annuity due according to the contract's stipulations.

3.9   **The immediate life annuity** :
The annuity whose payment begins one month, one quarter, one half-year or one year after the conclusion of the contract, according to the chosen frequency and which continues throughout the life of the insured person.

3.10   **The immediate fixed-term annuity** :
The annuity whose payment begins one month, one quarter, one half-year or one year after the conclusion of the contract, according to the chosen frequency. It ends at the end of the payment period fixed by the owner, but at the latest at the insured person's death.

3.11   **The deferred life annuity** :
The annuity whose payment begins at the end of the period fixed by the owner, provided that the insured person is alive. It is then paid, according to the chosen frequency, throughout the life of the insured person.

3.12   **The deferred fixed-term annuity** :
The annuity whose payment begins at the end of the period fixed by the owner, provided that the insured person is alive. It is then paid, according to the chosen frequency, and ends at the end of the payment period fixed by the owner, but at the latest at the insured person's death.

3.13   **The second-to-die option** :
The annuity (life or fixed-term, immediate or deferred) can be concluded with two insured persons; in this case, at the death of one of the two insured persons, the annuity will continue to be paid to the surviving annuitant, until his/her death.

3.14   **The period of refund** :
A time-frame for deferred life annuities during which the sum of the contractual annuity paid is less than the value of the initial single premium, plus the minimum interest and dividends, if any. For fixed-term annuities, the period of refund cannot be extended beyond the period during which the annuities are paid.

- 1 -

EXHIBIT 2 - (MB)                    USAOAVISS_00028327

3.15 **Death benefit :**
A sum equal to the single premium, after addition of the minimum guaranteed interest and any profit-sharing dividend paid which have accrued from the creation of a deferred life annuity, less any annuities or loans already paid. The death benefit ceases to exist if this balance is zero or in deficit.

## 4.   Taxation

The owner of the certificate shall be responsible for all taxes of any nature which may become due from the owner in any jurisdiction, either through regulations related to citizenship and/or residence, if applicable. The owner hereby agrees that neither the insurer nor its intermediaries shall be liable for the payment of any such tax(es). Specifically, any and all payment due shall be the exclusive responsibility of the certificate owner, including the responsibility to pay any applicable excise, income and/or capital gain tax. The insurer does not in its General Conditions affirm that FCAC™ will meet the tax law requirements of any jurisdiction other than Switzerland's. Every prospective owner should consult his domestic tax advisor to establish his own status in his country of residence.

## 5.   Distribution at death

(Conditions applicable only to eventual US residents)

5.1 **Death of the owner before the annuity income starting date.**

In case of death of the person Insured, its Residual Value will be credited to the beneficiary designated by the Owner. If any owner (or irrevocable beneficiary with ownership rights) dies before the date selected for commencement of annuity payments (the annuity income starting date), the beneficiary may elect to receive the death benefit. Payment will generally be made within 90 days of the date of a request for payment, subject only to receipt of all appropriate legal documents. Regardless of whether such an election is made, the entire value of the contract must be paid out to the beneficiary within one year of such death and this contract shall then terminate. For purposes of this paragraph, if any owner is not an individual, the death of any insured person shall be treated as the death of an owner.

5.2 **Death on or after the annuity income starting date.**

If the insured person dies on or after the contract's annuity income starting date, the contract's value will be that of any annuity payments still due under the annuity option selected, except in cases where the second-to-die option shall have been selected. If any owner, insured person, or irrevocable beneficiary with ownership rights dies on or after the annuity starting date, remaining payments, if any, will be made as rapidly as under the method defined in number 5.1.

## II.   INCEPTION & SCOPE OF THE CONTRACT

## 6.   Inception date of the contract

The contract takes effect on the crediting date of the funds when credited to the bank account of the insurer. The insurer then delivers the certificate to the owner.

## 7.   Territorial scope

The validity of this contract applies on a worldwide basis.

## 8.   Military service and war

The risks to which the military service or the war can expose the insured person are covered in accordance with the provisions of the chapter VII, number 3.

## III.   RIGHTS OF THE OWNER OR OF THE BENEFICIARY

## 9.   Beneficiary clause

9.1 The owner may appoint one or more beneficiaries to benefit from the rights held under the contract, either in the application form or by testament or by written instructions to the insurer. Beneficiaries may be changed or revoked at any time by the owner unless this right has been expressly waived by a signed written statement in the Certificate which has been remitted to the beneficiary (Art. 76ff LCA).

9.2 If the appointment by testament of a new beneficiary to an existing contract is not made known to the insurer in good time, the insurer shall be discharged from all liability.

## 10.   Assignment and pledging

10.1 The owner may assign the rights and obligations arising from the contract or pledge the related benefits to a third party. Assignment and pledging shall be made in writing. The contract and its addenda shall be delivered to the assignee or pledgee, and the insurer shall be notified accordingly. (Governed by article 73 of the Swiss Federal Law of April 2, 1908 (LCA).)

10.2 The act of assignment or pledging shall not deny the owner's right to benefit from the reception of the guaranteed interest as well as any dividend to be paid out under the profit sharing structure.

## 11.   Loans granted by the insurer

11.1 During the deferral period, a loan can be granted to the owner against remittance of the contract and its addenda and its constitution as security against a loan. Such loans will be governed by conditions set forth by the insurer and cannot under any circumstance be higher than the surrender value of the contract. Any loan still outstanding will become due at the end of the deferral period.

- 2 -

EXHIBIT 2 - (MB)                    USAOAVISS_00028328

If not repaid, it will be deducted from the surrender value and the contractual annuity will be recalculated. If the surrender value is nil, the contract will be terminated.

11.2 The insurer reserves the right to refuse a loan when in its sole judgment such a loan is not conducive to the good dispatch of the contract's obligations.

## 12. Protection of the owner

12.1 If the owner has irrevocably designated a beneficiary, the insurance rights pertaining to that designation are protected against seizure on behalf of any creditors of the owner (Art. 79, para. 2 LCA).

12.2 If the owner has designated his/her spouse, registered partner or descendants as beneficiary(ies), rights pertaining to the designation and to the owner are protected against seizure by the owner's creditors, without prejudice to any existing pledge (Art. 80 LCA).

## 13. Protection of the beneficiary

The owner may stipulate that the rights to annuity are non-transferrable (Art. 164 of the Swiss Law of Contract) and that they cannot be pledged as security by the beneficiary (Art. 899 of the Swiss Civil Code).

## 14. Surrender

Immediate or deferred annuities may be surrendered during the period of refund according to the technical rules described in chapter VIII.

## IV. PROFIT SHARING

## 15. Profit sharing

15.1 The insurer remits annually to its profit sharing fund any dividends due to owners. The dividends, withdrawn from the profit sharing fund, are assigned according to the insurer's distribution policy to each certificate having dividend rights. They are assigned at the certificate's inception date. The dividends are calculated at the end of the insurance year and are fully acquired at that time. If the insurance comes to an end or is transformed during an insurance year, the dividends are assigned in proportion to the passed period.

15.2 Dividends in immediate life annuities are paid with and in addition to the contractual annuity income payments.

15.3 Dividends in deferred life annuities are allocated from the first year and accrue during the deferral period in an individual deposit account. The insurer credits interests on the balance of the deposit account. The interest rate is fixed by the insurer and can be modified at any time. There is no minimum guaranteed interest rate. In the event of death, the dividends accrued during the deferral period are paid with the death benefits.

15.4 At the end of the deferral period, the cumulated amount on the deposit account is converted into a complementary annuity paid at the same time as the contractual annuity. The payment of this complementary annuity is guaranteed until the end of the contractual annuity. As soon as the certificate starts annuitizing, dividends are paid at the same time as the contractual annuity and the complementary annuity in the form of an increase of these last.

15.5 Each year, the assigned dividends are subject to a statement given to the owner. If necessary, this document takes into account the amount of the dividends on the deposit account.

15.6 Any change to the insurer's distribution policy is submitted to the supervisory authority and an information is given to the owner.

## V. PROOF AND ADMISSION OF CLAIMS

## 16. Proof of rights to an income annuity

The insurer pays the fixed annuity income according to the terms of the contract, provided that the insured person is alive at the agreed payment times. The onus is on the insured person to show, by an official certificate or by appearing in person, that this condition is met.

## 17. Proof of rights to death benefits

Beneficiaries in the event of the death of the insured person are required to return the original contract and to produce a death certificate in order to claim death benefits.

## 18. Admission of benefits

18.1 Upon determination by the insurer that the related and received documents can be deemed to have established that the said claim is justified, then the insurer will pay the benefits due to the entitled person, corporate body or trust within a maximum time limit of four weeks.

18.2 Fractional annuity income payments shall not be due for the period between the last annuity payment date to the day marking the death of the insured person.

18.3 If the person, corporate body or trust having title should be late in furnishing the proper documentation required by the insurer, the latter will be exempt from paying interest on the sum due over the delay period.

## VI. CURRENCY OF THE CERTIFICATE

## 19. Currency of the certificate

19.1 The certificate may be drawn up in Swiss francs or in one of the other currencies offered by the insurer. All the benefits are calculated in the selected currency.

- 3 -

EXHIBIT 2 - (MB)                    USAOAVISS_00028329

19.2   The owner may at any time request the conversion of the currency stipulated in the certificate into another currency offered by the insurer. The administrative costs of this operation, fixed by the insurer, are deducted from the value of the certificate or deducted from the next payment of the annuity, for the policies having started annuitizing.

19.3   The sums converted comprise the contractual benefits and the dividends accrued at the time of the conversion.

19.4   The conversion is carried out on the day of receipt of written instructions but no later than five Swiss trading days following receipt of instructions.

19.5   A new dividend rate is applied with each conversion, based on the prevailing interest rate of the currency concerned.

## VII.   MISCELLANEOUS PROVISIONS

## 20.   Correspondence

20.1   Correspondence to the insurer shall come into effect only upon its receipt at the insurer's headquarters.

20.2   The owner is responsible for notifying the insurer of any change of address.

20.3   Unless domiciled in Switzerland, the owner mandates a Swiss representative to whom the insurer may send any correspondence destined for the owner. The insurer will consider the representative mandated to receive any legal document concerning the policy and to hold any benefits due in settlement of claim by the owner or beneficiaries. This payment will terminate the right to any claim or contention from the owner or beneficiaries.

20.4   If the owner or representative changes address without notifying the insurer, any correspondence addressed to the owner's last known address will be considered as binding.

## 21.   Place and jurisdiction of contractual obligations

21.1   The insurer is bound to settle all its liabilities in the last currency stipulated in the contract at the Swiss domicile of the owner, beneficiary or representative.

21.2   Any litigation against the insurer by the owner or beneficiaries must be heard by the civil courts of Geneva or by the judiciary of their domicile in Switzerland.

## 22.   Coverage of risks in military service and in war
(Standard condition common to all life-assurance institutions operating in Switzerland)

22.1   Active service in the defense of Swiss neutrality or to maintain domestic law and order without operations of war, is considered as military service in time of peace and is thus covered by the ordinary general conditions of insurance.

22.2   If Switzerland is at war or engaged in hostilities involving warfare, a single war-premium is due from the outbreak of hostilities and is refundable one year after the end of the war, irrespective of the insured person's residence or involvement in the hostilities.

22.3   The single war-premium covers losses directly or indirectly caused by war to policies governed by these General Conditions. The insurer, under approval of the Swiss supervisory authorities, assesses any losses and available funds, as well determining the sum of the single war-premium and the method of its acquisition, which could require the reduction of insured benefits.

22.4   Should benefits become due before the single war-premium has been determined, the insurer has the right to postpone part of the benefit payments to no later than one year after the end of the war. The part of the benefits subject to postponement as well as the interest rate are determined by the insurer with the approval of the Swiss supervisory authorities.

22.5   The dates of the start and end of war for the purposes of the above clauses are determined by the Swiss supervisory authorities.

22.6   If the insured person dies while taking part in warfare or within six months after the cessation of hostilities, without Switzerland being at war or involved in hostilities, the mathematical reserve is due by the insurer. The mathematical reserve, calculated on the day of death, cannot exceed the insured death benefits. In survivors' annuities, the mathematical reserve is replaced by annuities corresponding to the mathematical reserve on the day of death. These cannot exceed the insured income annuities.

22.7   The insurer reserves the right to modify the provisions of this article with the approval of the Swiss supervisory authorities, and to apply any such modifications to the contract. Laws and administrative measures applied in times of war, notably concerning the refund of insurance policies, are strictly applied.

## 23   Translation
The contract's official language is French. While this document is a faithful translation of the original, it is not legally binding. Only the French text shall be legally binding.

## VIII.   TECHNICAL RULES

## 24.   Surrender

24.1   Surrender is executed on the insurer's receipt of instructions.

24.2   The surrender value is equal to the concurrent death benefit. Under no circumstance can it exceed the current value of the insurer's future obligations.

EXHIBIT 2 - (MB)

USAOAVISS_00028330

**Appendix A**

(The following articles are based on Swiss legal requirements intended to protect the certificate owner.)

**A.     Rules on the processing of personal information**

### Collection of the information

Within the framework of the acceptance of the insurance proposal then the management of the insurance contract, personal information concerning the owner and the insured person is collected by the insurer, or by an insurance intermediary on behalf of the insurer.

The insurer shall take all necessary measures for the respect of the federal legislation on data protection.

### Use of the information

The personal information is exclusively processed:

- within the framework of the acceptance of the insurance proposal, the management of the insurance contract as well as for the treatment of the disasters;

- in order to provide clients with information concerning the insurer.

There can be no other use of personal information without the express agreement of the concerned person.

When the insurer entrusts all or part of one of the tasks indicated above to a third party, it ensures that this third party treats the information which is transmitted to it in a strictly confidential way and use it only within the framework of the task with which it is entrusted.

### Transmission of information – confidentiality

The insurer treats in a strictly confidential way all personal information communicated to it concerning the owner and the insured person.

Within the framework of the risk examination procedures, the insurer can send inquiries for information and communicate data to other insurers or re-insurers.

In addition, personal information can also be transmitted by the insurer to other organs and authorities, on their request, when the legislation envisages it.

There can be no other transmission of personal information to a third party without the express agreement of the concerned person.

### Right of access

The concerned person can ask the insurer whether information concerning him or her is processed in its files and which is this information. The person can request the rectification of inaccurate information.

### Data storage

The insurer's databases are held in electronic and/or paper form. They are protected against unauthorized consultations and modifications.

The information is stored throughout the period of the insurance contract. At the end of the contract, it is only kept insofar as this is necessary according to the legal provisions.

EXHIBIT 2 - (MB)                    USAOAVISS_00028331

**25.    Technical bases, guarantees and fees**

Tariffs applied to the **FCAC**™ Certificate as well as the current value of the insurer's future obligations are calculated according to the ERM/ERF 2000 actuarial tables at the guaranteed technical gross interest rate of 2%. Dividends are credited as a supplement.

The single premium plus dividends and guaranteed interest, less institutional fees (insurance costs) and the total of paid annuities, comprise the total current value of the insurer's future obligations.

**26.    Supervisory authorities**

SwissTrust International is subject to Swiss federal supervision.

- 5 -

EXHIBIT 2 - (MB)                                    USAOAVISS_00028332



**SWISSTRUST**
i n t e r n a t i o n a l

<u>REGISTERED</u>

██████████████ LIMITED LIABILITY CO.
C/O SwissGuard International, GmbH
Bahnhofstrasse 52
8001, Zurich
Switzerland

**Customer Services**
**+41 22 518 11 25**

Geneva, September 06, 2012

Dear ██████████████ LIMITED LIABILITY CO.:

You will find enclosed your FCAC Certificate No. 2'616'776.

| | |
|---|---|
| Inception Date: | September 01, 2012 |
| Single Premium: | USD 1'000'000.00 |
| Owner: | ████████████ LIMITED LIABILITY CO. |
| Person Insured: | ███████████ (Insured Person 1); ███████████ (Insured Person 2) |

Should you have any questions concerning your certificate, please contact your Swiss Representative directly:

Mr. Darrell Aviss
SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Phone: +41 44 214 62 47
Fax:    +41 44 214 65 19
E-mail: info@swiss-annuity.com

We hope to have been of assistance.

Yours Sincerely,

SwissTrust

Encl. : ment.

USAOAVISS_00028333
CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

**Flex-Currency Annuity Certificate**

**Certificate FCAC No.** 2'616'776

**Owner:**

████████████ LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

**Person Insured:**

████████ (Insured Person 1)
████████ (Insured Person 2)
████████
████████ ████

**Date of Birth:**
Insured Person 1: ████ ████
Insured Person 2: ████ ████

**Single Premium:**                                    USD    1'000'000.00

**Contract's Inception Date:**                         September 01, 2012

**Scheduled Life Income Payment to start on:**         September 01, 2015

**Guaranteed Annual Life Income:**                     USD    69'766.74
   The annuity income is payable as long as the person insured is alive.

**Projected Annual Life Income:**                      USD    75'487.27
   Future dividends credited to your Certificate could vary and may not be guaranteed.

**Refund of Premium:** according to the Technical Bases of the Contract.
   In case of death of the person insured or surrender of the Certificate, its Residual Value will be credited to
   the beneficiary designated by the Owner.

**Beneficiary (ies):**
   Beneficiary (1)   ████████████ FOREIGN ASSETS TRUST  dated 28 February 2010

**Representative in Switzerland:**                     **SwissGuard International, GmbH**
                                                       **Bahnhofstrasse 52**
                                                       **8001 Zurich**
                                                       **SWITZERLAND**

Geneva, September 01, 2012                             **SwissTrust**
STE01E.DOT

**Swiss federal law on insurance contract (Art. 12 LCA).**
Please note: Under the above mentioned article (12 LCA) should any part of the Contract or its additional clauses fail to reflect the agreement
between the parties to the Contract, the applicant may request modification within four weeks from reception of the contract. In the absence
of any request for modification, the contract shall be deemed accepted.



USAOAVISS_00028334
CONFIDENTIAL INFORMATION - CONTENTS SUBJECT TO PROTECTIVE ORDER

**F C A C**

**Flex-Currency Annuity Certificate**

# ANNUAL STATEMENT

████████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

| | | |
|---|---|---|
| Client # | : | 129 / 199'971 |
| Certificate # | : | 2'616'776 / FCAC |

Please find hereby the annual statement of your certificate as per December 31, 2012

| | | | |
|---|---|---|---|
| Inception date: | September 1, 2012 | | |
| Premium | | USD | 1'000'000.00 |
| Contract Value | | USD | 1'027'587.58 |
| Residual Value (Death Benefit) | | USD | 1'027'587.58 |
| Guaranteed Annual Life Income | | USD | 69'766.74 |
| Guaranteed Technical Interest Rate | | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 9, 2013
MFVST01E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



EXHIBIT 2 - (MB)        USAOAVISS_00028335

**F C A C**

*Flex-Currency Annuity Certificate*

# ANNUAL STATEMENT

█████████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

Client #           :         129 / 199'971

Certificate #      :         2'616'776 / FCAC

Please find hereby the annual statement of your certificate as per December 31, 2013

| Inception date: | September 1, 2012 | |
|---|---|---|
| Premium | USD | 1'000'000.00 |
| Contract Value | USD | 1'099'518.10 |
| Residual Value (Death Benefit) | USD | 1'099'518.10 |
| Guaranteed Annual Life Income | USD | 69'766.74 |
| Guaranteed Technical Interest Rate | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 17, 2014
MFVST01E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



EXHIBIT 2 - (MB)                    USAOAVISS_00028336

**F C A C**

**Flex-Currency Annuity Certificate**

# ANNUAL STATEMENT

███████████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

| | | |
|---|---|---|
| Client # | : | 129 / 199'971 |
| Certificate # | : | 2'616'776 / FCAC |

Please find hereby the annual statement of your certificate as per December 31, 2014

| | | | |
|---|---|---|---|
| Inception date: | September 1, 2012 | | |
| Premium(s) | | USD | 1'600'000.00 |
| Contract Value | | USD | 1'828'994.55 |
| Residual Value (Death Benefit) | | USD | 1'828'994.55 |
| Guaranteed Annual Life Income | | USD | 128'029.69 |
| Guaranteed Technical Interest Rate | | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 16, 2015
MFVST01E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



SWISS**TRUST**
i n t e r n a t i o n a l

EXHIBIT 2 - (MB)               USAOAVISS_00028337

**F C A C**

**Flex-Currency Annuity Certificate**

# ANNUAL STATEMENT

███████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

| | | |
|---|---|---|
| Client # | : | 129 / 199'971 |
| Certificate # | : | 2'616'776 / FCAC |

Please find hereby the annual statement of your certificate as per December 31, 2015

| | | |
|---|---|---|
| Inception date: | September 1, 2012 | |
| Premium(s) | USD | 1'600'000.00 |
| Contract Value | USD | 3'019'352.94 |
| Residual Value (Death Benefit) | USD | 3'019'352.94 |
| Guaranteed Annual Life Income | USD | 211'354.71 |
| Guaranteed Technical Interest Rate | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 22, 2016
MFVST02E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



**SWISSTRUST**
international

EXHIBIT 2 - (MB)                    USAOAVISS_00028340

**FCAC**

**Flex-Currency Annuity Certificate**

# ANNUAL STATEMENT

████████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

| | | |
|---|---|---|
| Client # | : | 129 / 199'971 |
| Certificate # | : | 2'616'776 / FCAC |

Please find hereby the annual statement of your certificate as per December 31, 2016

| Inception date: | September 1, 2012 | | |
|---|---|---|---|
| Premium(s) | USD | 1'600'000.00 |
| Contract Value | USD | 3'230'707.66 |
| Residual Value (Death Benefit) | USD | 3'230'707.66 |
| Guaranteed Annual Life Income | USD | 224'150.55 |
| Guaranteed Technical Interest Rate | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 23, 2017
MFVST02E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



**SwissTRUST**
international

EXHIBIT 2 - (MB)                USAOAVISS_00028341

**FCAC**

**Flex-Currency Annuity Certificate**

# ANNUAL STATEMENT

███████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

| | | |
|---|---|---|
| Client # | : | 129 / 199'971 |
| Certificate # | : | 2'616'776 / FCAC |

Please find hereby the annual statement of your certificate as per December 31, 2017

| | | |
|---|---|---|
| Inception date: | September 1, 2012 | |
| Premium(s) | USD | 1'600'000.00 |
| Contract Value | USD | 3'456'857.22 |
| Residual Value (Death Benefit) | USD | 3'456'857.22 |
| Guaranteed Annual Life Income | USD | 241'980.01 |
| Guaranteed Technical Interest Rate | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 16, 2018
MFVST02E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



**SwissTRUST**
international

EXHIBIT 2 - (MB)          USAOAVISS_00028344

**F C A C**

**Flex-Currency Annuity Certificate**

## ANNUAL STATEMENT

████████ A NEVIS LIMITED LIABILITY CO.
c/o Morning Star Holdings Limited
Post Office Box 556, Main Street
Charleston, Nevis, West Indies

Client #          :          129 / 199'971

Certificate #     :          2'616'776 / FCAC

Please find hereby the annual statement of your certificate as per December 31, 2018

Inception date:          September 1, 2012

| | | |
|---|---|---|
| Premium(s) | USD | 1'600'000.00 |
| Contract Value | USD | 3'456'857.22 |
| Residual Value (Death Benefit) | USD | 3'698'837.23 |
| Guaranteed Annual Life Income | USD | 258'918.61 |
| Guaranteed Technical Interest Rate | USD | 7.00% |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative:

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zurich
SWITZERLAND

Geneva, January 8, 2019
MFVST03E.RPT

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



**SwissTRUST**
i n t e r n a t i o n a l

EXHIBIT 2 - (MB)          USAOAVISS_00028345



27.01.16

Zürich

2100421



CH-8001 Zürich

**R**

Recommandé
étranger

**RU 678 003 156 CH**

Please scan - Signature required
Veuillez scanner - Remise contre Signature

SWISS POST



SWISSGUARD
international

Bahnhofstrasse 52
CH-8001 Zürich
Switzerland

The SwissGuard Solution

EINSCHREIBEN

A Nevis LLC

c/o Mrs.

USA



NIXIE    934282420-1N      03/04/16

RETURN TO SENDER
UNABLE TO FORWARD
UNABLE TO FORWARD
RETURN TO SENDER

EXHIBIT 2 - (MB)

USAOAVISS_00028346



## CONSULTATION REQUEST FORM

**SWISSGUARD INTERNATIONAL, GmbH – ADVISORY SERVICES**
UNIQUE SOLUTIONS TAILORED TO UNIQUE SITUATIONS –
WEALTH PLANNING SINCE 2003

**SwissGuard International, GmbH**
**Bahnhofstrasse 52**
**CH-8001 Zurich**
**Switzerland**

**Tel. +41 44 214 6247**
**Fax +41 44 214 6519**

**swiss-annuity.com**

EXHIBIT 2 - (MB)                    USAOAVISS_00028348

**Please complete this form in CAPITAL LETTERS.**

Mail or fax the completed form to our offices in Switzerland.  Upon receipt, we will review your information and get in touch with you according to your preferred mode of contact.  The information that you provide will help us to understand your financial needs and objectives, as well as facilitate our response matched to those needs.  The information provided is kept strictly confidential and is not sold, rented or given away.  Our initial consultation / contact with you is free of any obligation.

**Send to: SwissGuard International GmbH, Bahnhofstrasse 52, CH-8001 Zurich, Switzerland, FAX: +41 44 214 6519**

## 1.  PERSONAL DETAILS

Last Name / Company Name: _____

First Name: _____

Title:   ☐Mr.   ☐Mrs.   ☐Ms.   ☐Mr. & Mrs.   ☐Other (please specify): _____

Residential address / registered offices address: ██ ██ ████ ─ ████ _____

Postal Code: _____ City/State: _____ Country: _____

E-Mail address: ████████ ; ████████ _____

Home telephone: ██─██─████ _____ Business telephone: _____

Nationality / Country of registered office: _____ Tax Domicile: _____

Marital Status:  ☒ married   ☐ divorced   ☐ widowed   ☐ unmarried       Gender: ☐male ☐female

Date of Birth / Date of incorporation (dd.mm.yyyy): _____

Children  ☐No  ☐Yes   If yes, how many? _____

Profession / field of business: _____

Have you contacted us before?   (No)   Yes     If yes, when and in what context? _____

_____

Where did you learn about our services? Who referred you?  *Bob Klueger* _____

_____

_____

Should you prefer that we call you to walk you through the form and discuss the different alternatives, please let us know via telephone, fax, email or by leaving a message at our toll-free number (US only) 1-800-796-7496.

EXHIBIT 2 - (MB)                    USAOAVISS_00028349

**Please complete this form in CAPITAL LETTERS.**

Mail or fax the completed form to our offices in Switzerland.  Upon receipt, we will review your information and get in touch with you according to your preferred mode of contact.  The information that you provide will help us to understand your financial needs and objectives, as well as facilitate our response matched to those needs.  The information provided is kept strictly confidential and is not sold, rented or given away.  Our initial consultation / contact with you is free of any obligation.

**Send to: SwissGuard International GmbH, Bahnhofstrasse 52, CH-8001 Zurich, Switzerland, FAX: +41 44 214 6519**

## 1.    PERSONAL DETAILS

Last Name / Company Name: _____

First Name: _____

Title:    ☐Mr.    ☐Mrs.   ☐Ms.    ☐Mr. & Mrs.      ☐Other (please specify): _____

Residential address / registered offices address: ████ ██ ██████ ██ ██████ _____

Postal Code: _____ City/State: _____ Country: _____

E-Mail address ████████ █ ██████████ _____

Home telephone: ____██████__-██████__-██████ _____ Business telephone: _____

Nationality / Country of registered office: _____ Tax Domicile: _____

Marital Status: ☒ married      ☐ divorced       ☐ widowed      ☐ unmarried         Gender: ☐male ☐female

Date of Birth / Date of incorporation (dd.mm.yyyy): _____

Children ☐No  ☐Yes   If yes, how many? _____

Profession / field of business: _____

Have you contacted us before?    (No)      Yes      If yes, when and in what context? _____

Where did you learn about our services?  Who referred you?  *Bob Klueger*

_____

_____

Should you prefer that we call you to walk you through the form and discuss the different alternatives, please let us know via telephone, fax, email or by leaving a message at our toll-free number (US only) 1-800-796-7496.

EXHIBIT 2 - (MB)                                USAOAVISS_00028349

## 2.    CONTACT REQUEST

**How would you like us to contact you?**

☐Home Tel.   ☐Business Tel.   ☒E-mail   ☒Mobile number: ▮▮ ▮▮▮▮▮

☐What days / times are most convenient for you?   any

☐Other contact mode (please specify): _____

## 3.    YOUR PRIMARY INTERESTS / OBJECTIVES

**Please summarize / describe your primary interests or motivation in contacting us.**

asset protection, retirement

**Which financial related services / program are you most interested in?**

☐**Insurance-based solutions:**
    ☐Classic Swiss Annuities (fixed annuities issued by Swiss insurance companies) – min. USD 100'000
    ☐Unit-linked Swiss Annuities (selection of mutual funds, issued by Swiss insurers) – min. USD 250'000
    ☐Personally Tailored Variable Annuities (min. USD 500'000)
    ☐Specialized Variable Annuities (min. USD 1'000'000), in particular:
        ☐Precious Metals Portfolio
        ☐Global Energy
        ☐Asset Allocation Model
        ☐Life Settlements Portfolio
    ☐ Private Placement Life Insurance (min. USD 5'000'000)
☐**U.S. IRA Investments**
☐**European bank account** (min. USD 1'000'000)
☐**International asset management** (min. USD 1'000'000)
☐**Trust and corporate services** – set up of offshore trust or corporation (min. USD 500'000)
☐**Precious metals investments** (min. USD 100'000)
☐**The monthly Wealth Bulletin** – plus periodic updates and alerts – free of charge
☐**Other** (please specify): _____

**Which are your primary planning interests / objectives (please check the three most important to you)?**

☒Solid Asset Protection – safety from frivolous lawsuits, creditors, etc.
☒Safety / Retirement Planning – safe lifetime income for yourself and/or your family
☒Tax-free / tax-deferred growth of assets
☐Inheritance planning
☐Unrestricted access to international investments and currencies
☐Capital preservation
☐Growth / Profitable investments
☐Liquidity / Prompt access to funds
☐Other (please specify): _____

**How much do you plan to invest (currency / amount)?**

_____

Should you prefer that we call you to walk you through the form and discuss the different alternatives, please let us know via telephone, fax, email or by leaving a message at our toll-free number (US only) 1-800-796-7496.

EXHIBIT 2 - (MB)

USAOAVISS_00028350

## 4.    INVESTOR PROFILE

**What is your reference currency or, in other words, the currency that performance shall be measured in?**
(Generally, the reference currency is your home currency, the currency in which you think and pay bills…)

☐CHF   ☐EUR   ☐GBP   ☐USD   ☐Other (please specify): _____

**What kind of returns do you expect?**

☐2% to 5%     ☐6% to 9%     ☐10% to 15%     ☐15% or more     ☐Other (please specify): _____

**What is your risk tolerance?**

☐Very low – capital preservation
☒Low – fixed / guaranteed income at low volatility
☐Medium – balance growth
☐High – capital gains / dynamic growth
☐Very high – speculative gains

**What is the expected time horizon of your investment?**

☒Short-term (1 to 4 years)     ☐medium-term (5 to 9 years)     ☐long-term (10 years or more)

**What kind of income requirements do you have?**

☐Immediate annual income   ☒Deferred annual income __3__ years after investment   ☐Lump-sum_____years after investment

**What is the current, approximate allocation of your investment portfolio?**

☐ _10_ % Cash

☐ _20_ % Bonds

☐ _20_ % Listed Stock

☐ _50_ % Real Estate

☐_____% Private Equity

☐_____% Other (please specify): _____

**What is your approximate net-worth in USD (incl. wealth of spouse)?**

☐Less than USD 500'000   ☐More than USD 500'000   ☒More than USD 1'000'000   ☐More than USD 5'000'000

**Have you invested internationally / with financial institutions outside of your country before?**

☐No, never     ☐Yes, but on a very limited basis     ☐Yes, at times     ☐Yes, regularly

**Miscellaneous Comments / Questions**

_____

_____

_____

**Your personal signature to confirm your request as specified above**

Date _____     Signature ████████████████████████████

Should you prefer that we call you to walk you through the form and discuss the different alternatives, please let us know via telephone, fax, email or by leaving a message at our toll-free number (US only) 1-800-796-7496.

EXHIBIT 2 - (MB)          USAOAVISS_00028351



Letter Appointing SwissGuard International, GmbH as Swiss Representative

Through my signature affixed on this letter, I hereby appoint SwissGuard International, GmbH as my Swiss insurance representative in any and all Swiss annuity related matters that I may wish to transact now or in the future.

All relevant correspondence including insurance company payment notices must be addressed to the owner of the policy and sent to the owner's address through SwissGuard International, GmbH.

**SwissGuard International, GmbH**
**Bahnhofstrasse 52**
**CH-8001 Zurich**
**Switzerland**

This instruction supersedes any and all previous representative appointments and related instructions I have issued.

**Name:** _____

**Address:** _____

_____

_____

_____

**Date:** _____

**Signature:** _____

*[handwritten note on sticky note:]* Darrell said he + Bob will fill this out (the first time I met him) & that copies would be mailed to Bob (as per Bob's instructions) for my file.

EXHIBIT 2 - (MB)          USAOAVISS_00028352



**Bank of America**                                    Funds Transfer Request Authorization (FTRA)

## Customer Information

| | | | |
|---|---|---|---|
| Name: | ███████ LLC | Address: | ████████ |
| Phone: | ████████ | | |

## Account Information

| | |
|---|---|
| Account | BUS_4628 |
| Account Title: | ████████ LLC |
| Requestor Name: | ████████ |

## Wire Information

| | | | |
|---|---|---|---|
| Wire Type: | INTERNAL_TRANSFER | Wire Date: | 02/09/2015 |
| Country: | US | Wire Amount (USD): | 1,000,000.00 |
| Currency of Recipient Account: | USD | Wire Fee: | 25.00 |
| Source: | IN PERSON | | |
| ID Verification | | | |
| ID Type: | DRIVER'S LICENSE (WITH PHOTO) FROM | | |
| ID Type: | BANK OF AMERICA DEBIT CARD, ATM CAR | | |

## Internal Wire Recipient Information

| | | | |
|---|---|---|---|
| Account Type: | BUS | Account Status: | NORMAL-OPEN |
| Account State: | NCA | Account Title: | HELVETIA TRUST |
| Account Number: | ████ 8949 | Address: | 112 EL PASEO |
| | | | SANTA BARBARA |
| | | | CA 93101-2229 US |
| Customer Reference: | REF NO 2'616'776 | | |

## Customer Approval

I authorize Bank of America to transfer my funds as set forth in the instructions herein (including debiting my account if applicable), and agree that such transfer of funds is subject to the Bank of America standard transfer agreement (see disclosure pages of this form) and applicable fees. If this is a foreign currency wire transfer, I accept the conversion rate provided by Bank of America at the time the wire is sent.

If a Consumer International wire: Due to International Remittance Transfer disclosure requirements, customers must remain in the banking center until customer is provided the R̶e̶m̶i̶t̶t̶a̶n̶c̶e̶ ̶T̶r̶a̶n̶s̶f̶e̶r̶ ̶R̶e̶c̶e̶i̶p̶t̶ ̶(̶R̶T̶R̶)̶. leaves prior to receiving RTR, the international remittance transfer will be cancelled.

Customer Signature ___████████___    Date of Request _02 / 09 / 15_

## For Bank Use Only: Wire Initiation/Banking Center Information

| | | | |
|---|---|---|---|
| Banking Center Name | COLLEGE HEIGHTS | Date: | February 9, 2015 |
| Company # / Cost Center #: | 00318 0001120 | Phone #: | 661-864-5424 |
| Initiating Associate Name: | HERRERA, DANIEL | Remittance ID #: | U2BMS84YH |
| Indicate Method of Signature Verification (if applicable): | | ☒ Sig Card | Bus. Resolution | Posted Check # |

EXHIBIT 2 - (MB)                                            USAOAVISS_00028368