*End of 2012*

# SWISS MANAGEMENT GROUP, LTD.

DARRELL AVISS
MANAGING DIRECTOR

112 EL PASEO
SANTA BARBARA, CALIFORNIA 93101
(805) 568-0102   FAX (805) 568-0108

SANTA BARBARA
ZURICH

28 January, 2013

Mr. 

Dear Mr. ▮

This letter is to confirm your investment in the Swiss Management Group, Ltd. Master Fund Series A.

Please refer to the Investment Memorandum which we previously delivered to you for complete Terms and Conditions.

We appreciate your confidence and are pleased to report the current status of your account as follows:

Account Number: ▮5104
Initial Contribution(s): USD 250,000.00
Current Value (as of 31.12.2012): USD 296,370.97

If you have any questions, please fee free to contact us at (805) 568-0102.

Best Regards,

Darrell Aviss
Managing Director

DAA/ck

13 January, 2021

Mr. Alan McDonald
████████████

Dear Mr. McDonald:

This letter is to confirm your investment in the Swiss Management Group, Ltd. Master Fund Series A.

Please refer to the Investment Memorandum which we previously delivered to you for complete Terms and Conditions.

We appreciate your confidence and are pleased to report the current status of your account as follows:

Account Number:              ████5104
Initial Contribution(s):         USD 250,000.00
Current Value (as of 31.12.2020):   USD 508,492.30

If you have any questions, please feel free to contact us at (805) 568-0102.

Best Regards,

*[signature]*

**Darrell Aviss**
Managing Director

DAA/av

# What Every Dentist Needs to Know about *Asset Protection*



Unknown to most Americans, conservative investors from around the world have invested in Swiss franc annuities for years. These legendary Swiss annuities offer a rare combination of **low risk and high returns**. Perhaps best of all, they are one of the safest and easiest ways to protect your assets and preserve your financial privacy.

## This FREE BOOK explains it all.

**Swiss Investing Secrets**, a 48-page, information packed book, reveals for the first time why Swiss franc annuities are considered the **"best annuities in the world"** and why every dentist should take a closer look at why informed Americans are now investing their money in ultrasafe Swiss franc annuities.

**You will discover:**

- How astute investors who learned about Swiss franc annuities thirty years ago – *and invested in them* – have enjoyed an average annual return of **9 percent!**\*
- The "triple threat" to American investors – and how a Swiss franc annuity can help you beat them all.
- Why Warren Buffett believes the U.S. Dollar is in danger – and what he's doing about it.
- How to wrap your family's investment assets in a blanket of Swiss asset protection.
- Why the Swiss consider secrecy as important as Americans consider the Bill of Rights – and why this should be important to you.
- Unlike most annuities, Swiss franc annuities can be converted to cash quickly and easily – with no penalties.

To learn why Swiss franc annuities are so much better than the alternatives, and how to use them to build a rock-solid investment plan that will protect you from financial, political, and lawsuit-related attacks on your personal net worth, call

## 1-800-965-4911 TOLL-FREE 24 HOURS A DAY



**SWISSGUARD** international
BAHNHOFSTRASSE 52, 8001 ZURICH, SWITZERLAND

\*Based upon guaranteed annuity interest, profit-sharing dividends, and appreciation of the Swiss franc (1971–2004). Swiss annuities may not be available to residents of all jurisdictions.

©2004 SwissGuard International, GmbH.

USAOAVISSREL00018013

EXHIBIT 18 (AM)







REGISTERED

Lausanne, April 11, 2006

Dear Mr.

You will find enclosed your MCAC Certificate No. 2'613'578.

Inception Date :   April 10, 2006
Single Premium :  CHF 25'900.00
Owner :            R.
Person Insured :   R.

This certificate is issued subject to the validity of the check having contributed for financing the single premium.

Should you have any questions concerning your certificate, please contact your Swiss Representative directly

SwissGuard International GmbH
Bahnhofstrasse 52
8001 Zürich
SWITZERLAND

Phone :  +41 1 214 6247
Fax :    +41 1 214 6519
E-mail : info@swiss-annuity.com

We hope to have been of assistance.

Yours Sincerely,

**FORCES VIVES**

Encl. : ment.

USAOAVISS_00009924

EXHIBIT 18 (AM)





**PAYMENT NOTICE**
MFVPNO1E.DOT

Certificate No.:  2'613'578

Owner:                                              Date of birth:

Date of surrender request:        April 18, 2018

Date of calculation:                  April 19, 2018

Single Premium                        CHF      25'900.00

Profit sharing                           CHF       2'616.90

**Preliminary Surrender Value***     **CHF      28'516.90**

*The calculation needed to initiate the liquidation process is referred to as the *Preliminary Surrender Value*. Please note that the final surrender value shall be based on the certificate's value after the enclosed payment information form is returned to *FORCES VIVES*, so that any lingering interest you are owed is then calculated and included in the payment.

Lausanne, April 20, 2018

FORCES VIVES

Alexandre Wuillemin        Susana Maitre

Encl. payment information form to be returned fully completed, dated and signed

Forces Vives – Caroline 9 – PO Box 288 – CH-1001 Lausanne – Phone +41 (0) 21 348 31 11 – Fax +41 (0) 21 348 23 19 – info@forcesvives.ch

USAOAVISS_00009928

EXHIBIT 18 (AM)





Multi-Currency Annuity Certificate

## ANNUAL STATEMENT

Mr

Client #         : 121 / 170'337
Certificate #  : 2'613'578 / MCAC

Please find hereby the annual statement of your certificate as per December 31, 2017

| | | |
|---|---|---|
| Inception date : | April 10, 2006 | |
| Premium | CHF | 25'900.00 |
| Surrender Value | CHF | 28'355.60 |
| Death Value | CHF | 30'091.00 |
| Guaranteed Annual Life Income | CHF | 1'091.80 |

If you have any question regarding this statement do not hesitate to contact your Swiss Representative :

SwissGuard International, GmbH
Bahnhofstrasse 52
8001 Zürich
Switzerland

Lausanne, January 2018
MFVST01E.RPT/1

If no written complaint is lodged within four weeks from reception of the statement, the latter is deemed to be accepted.



**GENERAL CONDITIONS FOR THE MULTI-CURRENCY ANNUITY CERTIFICATE (MCAC™) A SINGLE-PREMIUM FIXED ANNUITY — DEFERRED OR IMMEDIATE**

## I. PURPOSE INCEPTION & SCOPE OF THE CONTRACT

### 1. Purpose of the contract

1.1 The guaranteed benefits associated with **MCAC™** are as defined hereafter and form part of the contract.

1.2 The contract comprises these General Conditions, the annuity policy (hereafter "the Certificate") and its additional clauses, as well as any special conditions

### 2. Inception date of the contract

The contract takes effect on the crediting date of the funds when credited to the bank account of the insurer. The insurer then delivers the Certificate to the owner.

### 3. Territorial scope

The validity of this contract applies on a world-wide basis.

### 4. Contractual and legal basis

4.1 The written statements contained in the application form shall constitute the basis for this contract.

4.2 It is the responsibility of the owner to become familiar with the General Conditions of this contract. Its terms shall be binding.

4.3 Except for modifications expressly agreed upon between both parties, this contract shall be governed by the present General Conditions including the Swiss Federal Law of April 2, 1908 (LCA), as well as Swiss Law in general.

4.4 The contract as issued by the insurer stipulates the contractual rights and obligations of both parties.

4.5 Any special term or modification of the referenced contract without written confirmation from the Head Office of the insurer shall be null and void.

### 5. Definitions:

5.1 **Insurer**:

*Forces Vives* Swiss life assurance company — a registered company under Swiss Law with its headquarters in Lausanne, Canton of Vaud, Switzerland.

5.2 **Owner**:

The person or legal entity applying for paying and signing the contract.

5.3 **Insured person**:

The person upon whose life the contract's obligations and benefits are calculated and upon whose life the contract is issued.

5.4 **Beneficiaries during life**:

Any eligible party, person, corporate body or trust entitled to a contractual benefit as designated by the owner, while the insured person is alive.

5.5 **Beneficiaries at death**:

Any eligible party, person, corporate body or trust entitled to a contractual benefit on the death of the insured person as designated by the owner.

5.6 **Contractual year**:

Each period of one year beginning at the inception date of the contract and thereafter. The age of the insured person is measured in terms of complete years. Fractions of more than six months shall count as a full year and fractions of six months or less shall be disregarded.

5.7 **Annuity income payment**:

The amount of an annuity due according to the contract's stipulations.

5.8 **Immediate life annuity**:

An annuity starting immediately after the conclusion of the contract (or at the first selected payment date at the end of the following month, quarter, half-year or year), and which continues throughout the life of the insured person.

5.9 **Immediate fixed-term annuity**:

An annuity starting immediately after the conclusion of the contract (or at the end of the following month, quarter, half-year or year, according to choice) provided the insured person is alive, and which ends after a specified period, but not later than the death of the annuitant.

5.10 **Deferred life annuity**:

An annuity, the payment of which begins after a deferral period fixed by the owner, provided the insured person is alive at that date and which terminates no later than the death of the annuitant. Such annuities are paid over the entire life of the insured person.

5.11 **Deferred fixed-term annuity**:

An annuity, the payment of which begins after a period fixed by the owner, as long as the insured person is alive, which terminates upon the death of the insured person or at the latest at the time fixed by the owner.

5.12 **Second-to-die option**:

In case of the death of one of the two insured persons, then in lieu of a death-benefit payment, the annuity with all of its rights will remain in force in favour of the surviving annuitant.

- 1 -

5.13 **Period of refund**:

A time-frame for deferred life annuities during which the sum of the annuity payments paid is less than the value of the initial single premium, plus the minimum interest and dividends, if any. For fixed-term annuities, the period of refund cannot be extended beyond the period during which the annuities are paid.

5.14 **Death benefit**:

A sum equal to the single premium, after addition of the minimum guaranteed interest and any profit-sharing dividend paid which have accrued from the creation of a deferred life annuity, less any annuities or loans already paid. The death benefit ceases to exist if this ▮▮▮ is zero or in deficit.

## 6. Taxation

The owner of the certificate shall be responsible for all taxes of any nature which may become due from the owner in any jurisdiction, either through regulations related to citizenship and/or residence, if applicable. The owner hereby agrees that neither the insurer nor its agents shall be liable for the payment of any such tax(es). Specifically, any and all payment due shall be the exclusive responsibility of the certificate owner, including the responsibility to pay any applicable excise, income and/or capital gain tax. The insurer does not in its General Conditions affirm that **MCAC**™ will meet the tax law requirements of any jurisdiction other than Switzerland's. Every prospective owner should consult his domestic tax advisor to establish his own status in his country of residence.

## 7. Distribution at death
(Conditions applicable only to eventual US residents)

7.1 **Death of the owner before the annuity income starting date.**

If any owner (or irrevocable beneficiary with ownership rights) dies before the date selected for commencement of annuity payments (the annuity income starting date), the beneficiary may elect to receive the death benefit. Payment will generally be made within 90 days of the date of a request for payment, subject only to receipt of all appropriate legal documents. Regardless of whether such an election is made, the entire value of the contract must be paid out to the beneficiary within one year of such death and this contract shall then terminate. For purposes of this paragraph, if any owner is not an individual, the death of any insured person shall be treated as the death of an owner.

7.2 **Death on or after the annuity income starting date.**

If any insured person dies on or after the contract's annuity income starting date, the contract's value will be that of any annuity payments still due under the annuity option selected, except in cases where the second-to-die option shall have been selected. If any owner, insured person, or irrevocable beneficiary with ownership rights dies on or after the annuity starting date, remaining payments, if any, will be made as rapidly as under the method of distribution being used as of the date of such person's death.

## II. RIGHTS OF THE OWNER OR OF THE BENEFICIARY

### 1. Beneficiary clause

1.1 The owner may appoint one or more beneficiaries to benefit from the rights held under the contract, either in the application form or by testament or by written instructions to the insurer. Beneficiaries may be changed or revoked at any time by the owner unless this right has been expressly waived by a signed written statement in the Certificate which has been remitted to the beneficiary (Art. 76ff LCA).

1.2 If the appointment by testament of a new beneficiary to an existing contract is not made known to the insurer in good time, the insurer shall be discharged from all liability.

### 2. Assignment and pledging

2.1 The owner may assign the rights and obligations arising from the contract or pledge the related benefits to a third party. Assignment and pledging shall be made in writing. The contract shall be delivered to the assignee or pledgee, and the insurer shall be notified accordingly. (Governed by article 73 of the Swiss Federal Law of April 2, 1908 (LCA).)

2.2 The act of assignment or pledging shall not deny the owner's right to benefit from the reception of the guaranteed interest as well as any dividend to be paid out under the profit sharing structure.

### 3. Loans granted by the insurer

3.1 During the deferral period, a loan can be granted to the owner against remittance of the contract and its constitution as security against a loan. Such loans will be governed by conditions set forth by the insurer and cannot under any circumstance be higher than the surrender value of the contract. Any loan still outstanding will become due at the end of the deferral period. If not repaid, it will be deducted from the surrender value and the annuity will be recalculated. If the surrender value is nil, the contract will be terminated.

3.2 The insurer reserves the right to refuse a loan when in its sole judgement such a loan is not conducive to the good dispatch of the contract's obligations.

USAOAVISS_00009931

EXHIBIT 18 (AM)

### 4. Protection of the owner

4.1 If the owner has irrevocably designated a beneficiary, the insurance rights pertaining to that designation are protected against seizure on behalf of any creditors of the owner (Art. 79, para. 2 LCA).

4.2 If the owner has designated a spouse or descendants as beneficiaries, rights pertaining to the designation and to the owner are protected against seizure by the owner's creditors, without prejudice to any existing pledge (Art. 80 LCA).

### 5. Protection of the beneficiary

The owner may stipulate that the rights to annuity are non-transferrable (Art. 164 of the Swiss Law of Contract) and that they cannot be pledged as security by the beneficiary (Art. 899 of the Swiss Civil Code).

### 6. Surrender

6.1 Immediate or deferred annuities may be surrendered during the period of refund according to the technical rules described in chapter VII.

## III. PROFIT SHARING

### 1. Profit sharing

1.1 The insurer remits annually to its profit sharing fund any dividends due to insured persons from the products of with-dividend insurance policies. Such dividends from this fund are distributed to each contract having dividend rights, according to the insurer's rules.

1.2 Dividends in immediate life annuities are paid with and in addition to the annuity income payments.

1.3 Dividends in deferred life annuities are allocated from the first year and accrue during the deferral period in an individual deposit account. The accrued amount is converted into a complementary annuity, paid with the guaranteed annuity. In the event of death, the dividends accrued during the deferral period are paid with the death benefits.

1.4 No dividend is paid if the contract is surrendered during its first year.

## IV. PROOF AND ADMISSION OF CLAIMS

### 1. Proof of rights to an income annuity

1.1 The insurer pays the fixed annuity income according to the terms of the contract, provided that the insured person is alive at the agreed payment times. The onus is on the insured person to show by an official certificate or by appearing in person that this condition is met.

### 2. Proof of rights to death benefits

Beneficiaries in the event of the death of the insured person are required to return the original contract and to produce a death certificate in order to claim death benefits.

### 3. Admission of benefits

3.1 Upon determination by the insurer that the related and received documents can be deemed to have established that the said claim is justified, then the insurer will pay the benefits due to the entitled person, corporate body or trust within a maximum time limit of four weeks.

3.2 Fractional annuity income payments shall not be due for the period between the last annuity payment date to the day marking the death of the insured person.

3.3 If the person, corporate body or trust having title should be late in furnishing the proper documentation required by the insurer, the latter will be exempt from paying interest on the sum due over the delay period.

## V. CURRENCY OF THE CONTRACT

1.1 The contract may be drawn up in Swiss francs or in one of the other currencies offered by the insurer. All the benefits are calculated in the selected currency.

1.2 The owner may at any time request the conversion of the contracted currency to another offered by the insurer, upon payment of the costs fixed by the insurer.

1.3 The sums converted comprise the contractual benefits and the dividends accrued at the time of the conversion.

1.4 The conversion is carried out on the day of receipt of written instructions but no later than five Swiss trading days following receipt of instructions.

1.5 A new dividend rate is applied with each conversion, based on the prevailing interest rate of the currency concerned.

## VI. MISCELLANEOUS PROVISIONS

### 1. Correspondence

1.1 Correspondence to the insurer shall come into effect only upon its receipt at the insurer's headquarters.

1.2 The owner is responsible for notifying the insurer of any change of address.

1.3 Unless domiciled in Switzerland, the owner mandates a Swiss representative to whom the insurer may send any correspondence destined for the owner. The insurer will consider the representative mandated to receive any legal document concerning the policy and to hold any

USAOAVISS_00009932

EXHIBIT 18 (AM)

benefits due in settlement of claim by the owner or beneficiaries. This payment will terminate the right to any claim or contention from the owner or beneficiaries.

1.4 If the owner or representative changes address without notifying the insurer, any correspondence addressed to the owner's last known address will be considered as binding.

## 2. Place and jurisdiction of contractual obligations

2.1 The insurer is bound to settle all its liabilities in the last currency stipulated in the contract at the Swiss domicile of the owner, beneficiary or representative.

2.2 Any litigation against the insurer by the owner or beneficiaries must be heard by the civil courts of Lausanne or by the judiciary of their domicile in Switzerland.

## 3. Coverage of risks in military service and in war

(Standard condition common to all life-assurance institutions operating in Switzerland)

3.1 Active service in the defense of Swiss neutrality or to maintain domestic law and order without operations of war, is considered as military service in time of peace and is thus covered by the ordinary general conditions of insurance.

3.2 If Switzerland is at war or engaged in hostilities involving warfare, a single war-premium is due from the outbreak of hostilities and is refundable one year after the end of the war, irrespective of the insured person's residence or involvement in the hostilities.

3.3 The single war-premium covers losses directly or indirectly caused by war to policies governed by these General Conditions. The insurer, under approval of the Swiss supervisory authorities, assesses any losses and available funds, as well determining the sum of the single war-premium and the method of its acquisition, which could require the reduction of insured benefits.

3.4 Should benefits become due before the single war-premium has been determined, the insurer has the right to postpone part of the benefit payments to no later than one year after the end of the war. The part of the benefits subject to postponement as well as the interest rate are determined by the insurer with the approval of the Swiss supervisory authorities.

3.5 The dates of the start and end of war for the purposes of the above clauses are determined by the Swiss supervisory authorities.

3.6 If the insured person dies while taking part in warfare or within six months after the cessation of hostilities, without Switzerland being at war or involved in hostilities, the mathematical reserve is due by the insurer. The mathematical reserve, calculated on the day of death, cannot exceed the insured death benefits. In survivors' annuities, the mathematical reserve is replaced by annuities corresponding to the mathematical reserve on the day of death. These cannot exceed the insured income annuities.

3.7 The insurer reserves the right to modify the provisions of this article with the approval of the Swiss supervisory authorities, and to apply any such modifications to the contract. Laws and administrative measures applied in times of war, notably concerning the refund of insurance policies, are strictly applied.

## 4. Translation

The contract's official language is French. While this document is a faithful translation of the original, it is not legally binding. Only the French text shall be legally binding. (A copy is available on request from the insurer).

## VII. TECHNICAL RULES

### 1. Surrender

1.1 Surrender is executed on the insurer's receipt of instructions.

1.2 The surrender value is equal to the concurrent death benefit. Under no circumstance can it exceed the current value of the insurer's future obligations.

1.3 In the event of surrender during the first year of the contract, the amount refunded equals the value of the single premium in the last currency of the contract, less the handling costs. These costs amount to CHF 500.00 or the equivalent in another selected currency.

### 2. Technical bases, guarantees and fees

Tariffs applied to the MCAC™ Certificate as well as the current value of the insurer's future obligations are calculated according to the ERM/ERF 2000 actuarial tables at the guaranteed technical gross interest rate of 2%. Dividends are credited as a supplement. The single premium plus dividends and guaranteed interest, less institutional fees (insurance costs) and the total of paid annuities, comprise the total current value of the insurer's future obligations.

### 3. Supervisory authorities

Insurance companies active in Switzerland are subject to Swiss federal supervision.

MCAC™General Conditions – Octobre 2003

USAOAVISS_00009933

EXHIBIT 18 (AM)